Filed 6/6/23 Holt v. Gardner CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| CALVIN HOLT,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>W. GARDNER,<br><br>Defendant and Respondent. | F083001<br><br>(Kings Super. Ct. No. 19C-0100)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Kings County. Kathy Ciuffini, Judge.

Calvin Holt, in pro. per., for Plaintiff and Appellant.

Rob Bonta, Attorney General, Monica N. Anderson, Neah Huynh, and Martha Ehlenbach, Deputy Attorneys General, for Defendant and Respondent.

-ooOoo-

### INTRODUCTION

Plaintiff and appellant Calvin Holt appeals from a judgment of dismissal entered after the superior court sustained defendant and respondent W. Gardner's demurrer to plaintiff's third amended complaint (TAC) without leave to amend. We construe the notice of appeal as including an appeal from the order sustaining the demurrer.

In his TAC, plaintiff alleged claims involving several different incidents that occurred in the period 2016 through 2019. In this opinion, we conclude the superior court properly sustained the demurrer without leave to amend as to all claims except for one which relates to an alleged incident that occurred in approximately July or August of 2019 (the "alleged July/August 2019, incident"). As to the latter claim, we conclude the superior court properly sustained the demurrer but that leave to amend should have been granted. Consequently, we reverse the judgment, and affirm, in part, and reverse, in part, the court's order sustaining the demurrer.

## FACTUAL BACKGROUND

I. **State Superior Court and Related U.S. District Court Proceedings**

A. *Plaintiff's Original Complaint*

During all times relevant, plaintiff was an inmate in the California Department of Corrections and Rehabilitation (CDCR). On March 7, 2019, plaintiff, acting in propria persona, filed a "COMPLAINT – Personal Injury, Property Damage, Wrongful Death (Jud. Council Form PLD–PI–001)" (boldface type omitted) alleging causes of action for "General Negligence" and "Constitutional Violations" against "W. Gardner, Correctional Officer, et al."[1] in connection with the alleged mishandling of plaintiff's mail.

Plaintiff's original claims stemmed from his attempt to receive mail from the state prison in Corcoran, California. Plaintiff alleged that on April 9, 2018, he was summoned to his "Facility's Package/Parcel Window" by Gardner. At Gardner's instruction, plaintiff signed for receipt of a package. Then, in plaintiff's plain view, Gardner ripped open the package, which plaintiff "immediately recognized" as containing legal documents. Plaintiff confronted Gardner, told him the package was clearly marked "Sheriff's – Civil" so as to alert Gardner that its contents were legal in nature, and told

---

[1] Although the term "et al." which means "and others" was used by Holt in identifying named defendants in the original complaint, Gardner was the only named defendant in the original complaint. !(CT 6)!

2.

Gardner he violated California state regulations in opening the package. Gardner took possession of the contents of the package and left. He returned to say the package would be kept and then redistributed via "legal mail procedures."

Plaintiff alleged that, after a "reasonable time" had passed, he still had not received the legal documents that were mailed to him. As a result, plaintiff "filed an appeal" with the CDCR's Office of Appeals ("OOA") and pursued relief through the prison's administrative process. He alleged he received the OOA's "Final/Third Level of Administrative Appeal Review" and was interviewed as part of the process. He was told the alleged violations of mail protocols were due to " 'inadvertence.' " In response, plaintiff alleged Gardner violated his obligations under California Code of Regulations, title 15, section 3395, which provides: "Employees must not sleep or be less than alert and in full possession of all faculties while on duty." (Cal. Code. Regs, tit. 15, § 3395.)

Plaintiff also alleged that he filed a Government claim in connection with the above events on September 7, 2018, which "was denied on or about [September] 21[, 20]18 or later"; that the OOA administrative appeal process concluded on or about January 24, 2019; that he suffered mental anguish and distress as a result of the incident; and that he "suffered a default judgment as the result of the mail violation."

**B.** ***Removal of the Action to Federal Court, Plaintiff's Amendments to the Complaint and Subsequent Remand of the State Law Claims to State Court***

On May 31, 2019, the Attorney General of California (A.G.), on behalf of Gardner, filed a Notice to Adverse Party of Removal to Federal Court (boldface type and unnecessary capitalization omitted) indicating Gardner had removed the action to the United States District Court for the Eastern District of California.

The district court screened the case and granted plaintiff leave on three occasions to amend his pleadings in order state a cognizable claim for relief under federal law resulting in plaintiff filing his TAC in the district court.

3.

The TAC alleged causes of action against Gardner and other correctional officers (C.O.s) – i.e., J. Vanaman, C.O. Pano, and C. Gonzales. As described by the district court, the TAC alleged "causes of action under 42 U.S.C. [section] 1983; 15 C.C.R. sections 3084, *et seq.*; and what appear[ed] to be state law claims for negligence." In addition to the claims set forth in plaintiff's original complaint, plaintiff alleged, without limitation, that, on or about October 10, 2016, Officer Vanaman threw plaintiff's mail in the trash thereby depriving him of his mail; that plaintiff began subscribing to the Bayview Newspaper in late 2017 or early 2018 and renewed his subscription in January of 2019 for monthly distribution, but he had only received approximately eight newspapers "for which CDCR John/Jane Does are culpable"; that in 2018, Officer Pano deprived him of a "medical shower" to which he was entitled due to a medical ailment he suffered, and that plaintiff was denied or hampered in his ability to obtain redress for the violation due to various mail violations of CDCR personnel; and that "in approximately July or August of 2019," Gardner informed plaintiff that plaintiff had received a package in the mail containing an extension cord but that plaintiff was not authorized to have the extension cord. With regard to this latter alleged event, plaintiff alleged he informed Gardner he wanted to return the extension cord, completed the necessary paperwork to facilitate the return, provided Gardner with the cost of postage by providing him "10 prepaid indigent envelopes," but that Gardner improperly disposed of plaintiff's extension cord, never processed the return, and never returned the cost of the postage that plaintiff provided Gardener.

Ultimately, on July 17, 2020, the district court dismissed plaintiff's federal law claims for failure to state a cognizable claim, and remanded plaintiff's state law claims to the Kings County Superior Court. The superior court received the remand order on July 20, 2020.

**C.**      *Gardner's Demurrer and Related State Court Filings, Plaintiff's Peremptory Challenge of the Superior Court Judge Under Section 170.6, and the Court's Judgment*

On August 17, 2020, Gardner demurred to plaintiff's TAC pursuant to subdivision (e) of Code of Civil Procedure section 430.10.[2] The grounds for the demurrer were "that the federal claims are barred for lack of jurisdiction and by res judicata"; that the TAC "does not state facts sufficient to constitute any cause of action"; and that the TAC "does not include facts demonstrating compliance with the Government Claims Act." As part of his demurrer, Gardner requested the superior court take judicial notice of various documents filed by plaintiff in the district court after it was removed to federal court and before it was remanded back to the superior court. In addition, Gardner requested the court take judicial notice of various documents filed in the matter *Holt v. Vanaman* (Super. Ct. Kings Co., 2018, No. CV0082) (the "*Vanaman* lawsuit") – i.e., the lawsuit plaintiff claimed to have suffered a default judgment in as a result of alleged mail violations committed by Gardner.

On August 20, 2020, the superior court received a proposed *second* amended complaint ("proposed SAC") from plaintiff despite the fact plaintiff had already filed a *third* amended complaint (i.e., the TAC) in federal court. Among the exhibits to the proposed SAC were (1) a Government Claims Act (Gov. Code, § 810 et seq.) claim against Gardner signed and dated by plaintiff on September 7, 2018; and (2) a Government Claims Act claim against "Gardner, C. Gonzales, et al." signed and dated by plaintiff on January 9, 2020. The proposed SAC bears a "RECEIVED" stamp from the superior court. However, the Case Summary does not indicate it was filed with the court.

---

[2] All statutory references are to the Code of Civil Procedure unless otherwise noted.

Subdivision (e) of section 430.10 provides: "The party against whom a complaint or cross-complaint has been filed may object, by demurrer …, to the pleading on any one or more of the following grounds: [¶]…[¶] (e) The pleading does not state facts sufficient to constitute a cause of action." (§ 430.10, subd. (e).)

The superior court's Case Summary shows that the court issued an order on August 28, 2020. A copy of the order was not included in the record on appeal, but the case summary describes its provisions as "Directing the Clerk to Receive Pleading from Plaintiff; Order Finding that the [TAC] received March 9, 2020 is the Operative Complaint in This Case and That the Hearing on Demurrer Remains on Calendar" (italics omitted).[3] As described below, an order containing similar provisions was also filed by the clerk of court on September 15, 2020.

On September 14, 2020, plaintiff filed his opposition to Gardner's demurrer. In his opposition, plaintiff argued, among other things, that the superior court implied his first amended complaint (FAC) would be held in abeyance and/or filed; that, as a result, Gardner's demurrer was "moot/frivolous" and should have been directed toward the FAC, and not the TAC that was filed in the federal district court; that plaintiff's request to file the proposed SAC was pending; and that plaintiff was being denied prison library privileges to which he was entitled and which were necessary to the advancement of his case. Plaintiff's opposition to the demurrer made reference to a pleading entitled, "Plaintiff's Request to File Amended/Supplemental Complaint for Good Cause, that Warrants Dismissal of Defendant[']s Demurrer" (unnecessary capitalization omitted), however no copy of the referenced pleading is included in the record on appeal.[4]

---

[3] The superior court's Case Summary (i.e., register of actions) reflects the court received a "Copy of Third Amended Civil Rights Complaint filed in the Eastern District Court" (italics omitted) on March 9, 2020. !(CT 820)!

[4] The record on appeal does contain a pleading bearing the same title, but it is dated December 20, 2020, and was filed January 20, 2021, several months after plaintiff's opposition to Gardner's demurrer was filed. Thus, based on its date, the later filed pleading does not appear to be the same document referenced by plaintiff in his September 14, 2020 opposition to Gardner's demurrer. However, the later filed pleading does recite: "Note: Be advised that the above referenced attachments are incorporated herewith by reference, as the plaintiff continues to be deprived of access to the law library. Thus, said copies are already within the court's records, as part of plaintiff's 'September 03, 2020, 21 Pages Filing/Motion to Amend' " (boldface type and unnecessary capitalization omitted). !(CT 283–284)!

6.

On September 15, 2020, the superior court entered its "Order Directing the Clerk to Receive Pleading From Plaintiff[; and ¶] Order Finding that the Third Amended Complaint Received March 9, 2020 Is the Operative Complaint in This Case and that the Hearing on Demurrer Remains on Calendar." The order provided, in part, "The court reaffirms its order of August 28, 2020 … that the operative complaint is the [TAC]. The hearing on demurrer to the [TAC] remains on calendar for September 21, 2020. Opposition to the demurrer is required to be filed 9 court days before the hearing." The order also made reference to a pleading entitled, "Plaintiff's request to file amended/supplemental complaint for good cause, that warrants dismissal of defendants demurrer," which indicates it was received by the court and "served by mail on the Deputy Attorney General on September 3, 2020." Presumably, this reference is to the same document referenced by plaintiff in his opposition to Gardner's demurrer, but, as mentioned, the record on appeal does not include a copy of the referenced pleading.[5]

The court's Case Summary shows the hearing on the demurrer was continued on Gardner's motion.

On October 9, 2020, Gardner filed his reply in support of the demurrer. Among other things, the reply noted that Gardner had opposed plaintiff's motion to amend his complaint and that no amended complaint was filed in the superior court. Gardner requested the court reject plaintiff's argument that the demurrer was moot.

On January 20, 2021, plaintiff filed "Plaintiff's Request to File Amended/Supplemental Complaint for Good Cause, that Warrants Dismissal of Defendant[']s Demurrer" (unnecessary capitalization omitted). In it, plaintiff requested the court grant him leave to file a fourth amended complaint which he described as his "formerly mailed/labeled [proposed SAC]" and "relabeled 'FOURTH AMENDED

---

[5] See footnote 4, *ante*.

7.

COMPLAINT.' " Attached to plaintiff's request was a copy of his proposed fourth amended complaint and related exhibits.

Also on January 20, 2021, the superior court issued its tentative ruling on Gardener's demurrer to the TAC. In its tentative ruling, the court noted plaintiff's attempt to file the proposed SAC and stated, "[I]t was never part of a properly noticed motion to amend";[6] "[p]laintiff failed to comply with the requirements of attaching it to a motion to amend[]"; "[p]laintiff failed to set forth in a declaration what new allegations were proposed, when the facts underlying the new allegations were discovered, and why the amendments were not made sooner. (Cal[.] Rules of Court[, rule] 3.1324[.])"; and "[g]iven this deficiency, the court found that the operative pleading was the [TAC]. That was pursuant to an Order filed by this [c]ourt on August 28, 2020."

On February 1, 2021, plaintiff moved under section 170.6 to disqualify the superior court judge. Plaintiff contended the judge should be disqualified because she "was endorsed for office by CDCR's Union"; plaintiff "believe[d the CDCR Union] contributed funds to her campaign"; and the judge was previously a prosecutor who "prosecuted inmates" incarcerated in the same prison as plaintiff. Plaintiff contended the judge had a sua sponte duty to recuse herself from the case. Plaintiff also contended that the judge's "adverse tentative rulings" against him demonstrated her bias; that she failed to liberally construe his pleadings as a pro se litigant and, instead, held him to the standards of an attorney; and that she set court deadlines that he could not reasonably meet. On February 16, 2021, the superior court denied plaintiff's section 170.6 motion.

On March 8, 2021, plaintiff filed an objection to the superior court's January 20, 2021, tentative ruling on Gardner's demurrer. In it, plaintiff contended he "submitted

---

**6** After the federal district court remanded the state law claims contained in plaintiff's TAC to the superior court, and after Gardner filed his demurrer to the TAC in superior court, plaintiff attempted to file an amended complaint – identifying it as a – second amended complaint.

multiple amended" complaints "in moving papers" on September 3, 9, 12, and 20, 2020, and on January 24 and 27, 2021 and made " 'numerous oral motions, with oral notices" during prior hearings.[7] Plaintiff contended the superior court erred in treating the TAC as the operative complaint because plaintiff was required to modify his original complaint "to satisfy the 42 U.S.C. [section] 1983 complaint requirements" (unnecessary capitalization omitted) which differed from the complaint format set forth in Judicial Council Form PLD-PI-001. Plaintiff further contended that the court misinterpreted the federal district court's order as a dismissal of his state claims with prejudice; that he has been denied law library privileges; that CDCR personnel have refused to sign his proofs of service which undermine his advancement of the case; and that he was entitled to one free amendment of his complaint. Plaintiff also reiterated his claims of judicial bias similar to the allegations of his disqualification motion of February 1, 2021.

On March 15, 2021, plaintiff moved again to disqualify the superior court judge pursuant to section 170.6, subdivision (a)(6). The court's Case Summary indicates the latter motion was denied on March 26, 2021.

On April 21, 2021, the superior court issued its order to sustain Gardner's demurrer to the TAC. In the order, the court noted that, on April 6, 2021, the parties appeared at the hearing telephonically (with Gardner appearing through his counsel) and that plaintiff had "also appeared at demurrer hearings on November 19, 2020, January 20, 2021, and February 25, 2021," and that "[t]he [c]ourt continued the hearing several times" at plaintiff's request to provide him with "additional time to respond to the [c]ourt's tentative [ruling] and file objections." The court then indicated that it was sustaining the demurrer without leave to amend; that plaintiff's "federal claims … were resolved and dismissed by the federal court," which constituted "res judicata"; and that the court did not have jurisdiction to reconsider those claims. The court sustained the

_____

[7] The record on appeal does not include a reporter's transcript.

9.

demurrer to plaintiff's negligence claim, which was premised, in part, on the allegation that plaintiff suffered a default in the *Vanaman* lawsuit. The court took judicial notice of the fact there was no default in the case, that it was decided on its merits, and that no additional facts to support a claim for damages were alleged. Finally, the court noted the TAC contained no allegation that plaintiff complied with the Government Claims Act. The court determined "[a] further opportunity to amend would be futile[]" and sustained the demurrer without leave to amend.

On April 21, 2021, the judgment of dismissal from which plaintiff appeals was entered. Notice of entry of the judgment was served on May 13, 2021.

On June 25, 2021, plaintiff filed a timely notice of appeal from the judgment of dismissal.

### D. *State Court Filings Postjudgment*

On April 22, 2021, the superior court received a document entitled "Plaintiff's Dispute of Defendants' Inaccurate Proposed Order Timely Filed From His Receipt Thereof on April 16, 2021" (unnecessary capitalization omitted). Plaintiff contended the proposed order should have (1) indicated the court, at one point in the oral argument, ordered him "not say another word"; and (2) that the aforementioned statement prevented him from exercising his right to request a stay from the court pending a decision from this court on a writ petition to seek disqualification of the judge, and from objecting to the court's exercise of jurisdiction over the matter.

On May 17, 2021, plaintiff filed a "Declaration of Pro Se Plaintiff in Response to 'Declaration of Counsel Regarding Receipt of Plaintiff's Objections to the Proposed Order Sustaining Defendant's Demurrer', Received by Plaintiff on May 7, 2021" (unnecessary capitalization omitted). In the declaration, plaintiff stated that he received the A.G.'s declaration concerning plaintiff's objections to the proposed order sustaining Gardner's demurrer on May 7, 2021; that he received two " 'APPROVED DECISIONS' " through CDCR administrative procedures relating to another nonparty

10.

C.O., which plaintiff contended confirms his prior allegations that his efforts at advancing and prosecuting his case were hampered and/or prevented by, for example, him being denied library privileges, access to mail, and related mailing privileges; that his disqualification motion(s) against the judge should have been granted; and that, based on the latter contention, the court was without jurisdiction to hear his case.

On May 25, 2021, the superior court received a document entitled "Plaintiff's Oral Notice of Motion, Motion and Application to Amend Complaint Pursuant to CCP §§ 426.50; and 472, et seq.; Declaration in Support Thereof; and Memorandum of Points and Authorities" (unnecessary capitalization omitted). In it, plaintiff again argued the TAC should not have been deemed the operative complaint. He likewise contended that his prior proposed amended complaints contained his "Exhausted Administrative Remedies" and "Government Claims [Act claim]" (unnecessary capitalization omitted). Plaintiff contended he "intentionally removed the administrative remedies exhaustions, and government claim, to both downsize his submission of documents for compliance with" federal rules (underlining omitted). Plaintiff included a copy of the proposed fourth amended complaint he previously submitted to the court on January 20, 2021, in connection with his request to file an amended complaint. Among the attachments to the proposed fourth amended complaint was the Government Claims Act claim dated September 7, 2018, against Gardner. Another attachment included the Government Claims Act claim dated January 9, 2020, against "Gardner; C. Gonzales, et al."

Also on May 25, 2021, the superior court issued an order directing the clerk of court to receive but not calendar plaintiff's May 25, 2021 motion to amend. The court noted that the judgment had already issued and notice of entry of the judgment had been mailed to plaintiff; and that "[a] motion to amend a pleading is not an appropriate post judgment pleading." The court further noted it was in receipt of plaintiff's fourth amended complaint, which had "already been received (but not acted upon) by order filed on January 20, 2021."

On July 16, 2021, the superior court issued an "Order Re: Untimely Filing of Motion to Vacate …" (unnecessary capitalization omitted) in which it noted its receipt of plaintiff's motion to vacate the judgment dated June 17, 2021, together with a proof of service showing service of the motion to vacate on Gardner's counsel on an unspecified date in June of 2021. Noting a motion to vacate must be filed 15 days after service of notice of entry of judgment, the court denied the motion as untimely.

## II.     Prior Appellate Court Proceedings

On April 9, 2021, plaintiff filed with this court a "Petition for Writ of Mandate/Prohibition" (unnecessary capitalization omitted) to challenge the superior court's denial of his motions to disqualify the superior court judge pursuant to section 170.6. The petition was denied.[8]

## DISCUSSION

## I.     Plaintiff's Contentions on Appeal

Plaintiff's contentions on appeal are (1) the superior court judge who sustained Gardner's demurrer and rendered judgment in favor of Gardner was without jurisdiction to adjudicate plaintiff's case due to her refusal to recuse herself following plaintiff's section 170.6 peremptory challenge to her presiding over the matter; and (2) the superior court failed to apply appropriate federal law in adjudicating plaintiff's 42 U.S.C. section 1983 claim. In addition, plaintiff references the court's refusal to allow plaintiff to file an amended complaint and notes that "otherwise there would have been an Amended State Complaint."

---

[8] Gardner has requested this court judicially notice its May 20, 2021 denial of plaintiff's Petition for Writ of Mandate. We deferred ruling on Gardner's request pending consideration of the appeal on its merits. We now grant the request. Judicial notice of the document is appropriate in that it is decisional authority of this court (Evid. Code § 452, subd. (a)) and relevant to Gardner's argument on appeal.

**II.     The Judge Sitting by Way of Assignment for All Purposes Was Not Disqualified and Had Jurisdiction to Hear and Determine a Demurrer Following Plaintiff's Peremptory Challenge**

Plaintiff contends the judge that ruled on the demurrer was biased, effectively disqualified from the case by way of plaintiff's section 170.6 motion(s), and without jurisdiction to hear and determine the demurrer.  We disagree.

**A.     *Standard of Review***

 "[T]rial courts have no discretion to deny a section 170.6 motion filed in compliance with the statute's procedures.  [Citation.]  Because the trial court exercises no discretion when considering a section 170.6 motion, it is 'appropriate to review a decision granting or denying a peremptory challenge under section 170.6 as an error of law.  Therefore we review under the … de novo standard.' " (*Bontilao v. Superior Court* (2019) 37 Cal.App.5th 980, 987–988.)

**B.     *Section 170.6***

"Section 170.6 guarantees 'to litigants an extraordinary right to disqualify a judge.  The right is "automatic" in the sense that a good faith *belief* in prejudice is alone sufficient, proof of facts showing actual prejudice not being required.  [Citations.]' [Citations.]  The object of this section is to provide the party and attorney with a substitution of judge to safeguard the right to a fair trial or hearing.  [Citation.]  This section is intended to ensure confidence in the judiciary and avoid the suspicion which might arise from the belief of a litigant that the judge is biased where such belief is difficult, if not impossible, to prove.  [Citation.]  The section is liberally construed and the trend is to grant relief unless absolutely forbidden by statute." (*People v. Superior Court (Maloy)* (2001) 91 Cal.App.4th 391, 394–395 (*Maloy*).)

Section 170.6 provides, in relevant part: "A judge … of a superior court of the State of California shall not try a civil … action … of any kind or character nor hear any matter therein that involves a contested issue of law or fact when it is established as provided in this section that the judge or court commissioner is prejudiced against a party

13.

or attorney or the interest of a party or attorney appearing in the action or proceeding." (§ 170.6, subd. (a)(1).) "A party … may establish this prejudice by an oral or written motion without prior notice supported by affidavit or declaration under penalty of perjury, or an oral statement under oath, that the judge … to whom it is assigned, is prejudiced against a party … or the interest of the party …, so that the party … cannot, or believes that he or she cannot, have a fair and impartial trial or hearing before the judge …." (*Id.* at subd. (a)(2).)

"The peremptory challenge right is not absolute and unlimited. [Citation.] 'Inherent in its exercise is the requirement of conformance to certain reasonable procedures invoked for the benefit of … all … litigants.' [Citation.] 'The courts of this state have been vigilant to enforce the statutory restrictions on the number and timing of motions permitted.' " (*Maloy*, *supra*, 91 Cal.App. 4th at p. 395.)

A section 170.6 motion, "[i]f directed to the trial of a civil cause that has been assigned to a judge for all purposes, … shall be made … within 15 days after notice of the all purpose assignment, or if the party has not yet appeared in the action, then within 15 days after the appearance. (§ 170.6, subd. (a)(2).) Section 170.6 requires that the affidavit in support of the motion, or any oral statement or declaration under penalty of perjury, substantially follow the form set forth in the statute. (*Id.* at subd. (6).)

If the motion is timely made and substantially follows the prescribed form, disqualification is mandatory and automatic. (*Grant v. Superior Court* (2001) 90 Cal.App.4th 518, 524 [" 'where a disqualification motion is timely filed and in proper form, the trial court is bound to accept it without further inquiry' "].)

**C.** ***Plaintiff's Claims of Error with Regard to the Superior Court's Denial of His Section 170.6 Motion Are Not Cognizable on Appeal***

Section 170.3 provides, in part: "The determination of the question of the disqualification of a judge is not an appealable order and may be reviewed only by a writ

of mandate from the appropriate court of appeal sought only by the parties to the proceeding." (§ 170.3, subd. (d).)

In *People v. Panah* (2005) 35 Cal.4th 395 (*Panah*), the "defendant filed a writ petition in the Court of Appeal seeking review of the denial of [his] disqualification motion, which the Court of Appeal summarily denied." (*Id.* at p. 445.) On review by the California Supreme Court, the Court held the defendant's claim of error was "not cognizable on appeal." (*Id.* a p. 444.) The high Court wrote: "As we have repeatedly held, the statute means what it says: … section 170.3, subdivision (d) provides the exclusive means for seeking review of a ruling on a challenge to a judge, whether the challenge is for cause or peremptory." (*Ibid.*) Noting the Court of Appeal had denied the defendant's writ petition, the high Court stated, the "[d]efendant thus received the appellate review of his statutory claim to which he was entitled." (*Id.* at p. 445.) The high Court rejected the defendant's claim that writ review was "merely a procedural step that must be followed before he [could] raise the disqualification issue on appeal…." (*Ibid.*)

Here, plaintiff filed a petition for writ of mandate/prohibition by which he sought review of the superior court's orders denying his 170.6 motions. This court summarily denied the petition. Plaintiff is precluded from raising the issue again on appeal. (*Panah*, *supra*, 35 Cal.4th at p. 444.)

**D.    *The Superior Court Did Not Err in Denying Plaintiff's Section 170.6 Motion***

In any event, the superior court did not err in denying plaintiff's section 170.6 motion. The judge was assigned to plaintiff's case for all purposes on April 26, 2019, and plaintiff was served notice of the assignment, by mail service, on said date. Plaintiff's first section 170.6 motion was not filed until February 1, 2021 – more than one year and nine months after the judge was assigned to the case. In the interim, plaintiff had appeared before the judge on several occasions, both telephonically and in written

briefing. It was not until after the court issued its tentative ruling on defendant's demurrer to the TAC on January 20, 2021– which plaintiff was privy to by virtue of his having attended the hearing at which the tentative ruling was announced – that plaintiff then sought to disqualify the judge.

In order to have been timely, plaintiff would have had to have made his section 170.6 motion no later than "15 days after notice of the all purpose assignment" of the judge. (§ 170.6, subd. (a)(2).) Plaintiff's failure to bring a peremptory challenge to the judge's assignment within said period of time was fatal to his section 170.6 motions.

The superior court did not err in denying plaintiff's 170.6 motions.

## III. The Contention the Superior Court Erroneously Applied California Law in Sustaining Gardner's Demurrer Is Without Merit

Plaintiff contends "the [superior c]ourt had no jurisdiction to sustain [Gardner's] Demurrer to [plaintiff's] 42 U.S.C. [section] 1983 Civil Rights Complaint, given that Demurrers are not in the purview of federal statutes to dismiss/adjudicate a federal 42 U.S.C. [section] 1983 Complaint." In support of its argument, plaintiff quotes extensively from *Bach v. County of Butte* (1983) 147 Cal.App.3d 554 (*Bach*) in which the court held "… California state courts should apply federal law to determine whether a complaint sufficiently pleads a cause of action under the federal Civil Rights Act." (*Id*. at p. 558.)

Plaintiff is mistaken as to the claims that were remanded back to the superior court. The only claims that were remanded back to the superior court were plaintiff's state law claims. Plaintiff's federal claims had already been dismissed by the district court. Thus, plaintiff had no pending federal claims before the superior court. Consequently, *Bach* is inapposite. It involved the criteria by which a California state court should assess the pleading of a complaint under 42 U.S.C. section 1983. (*Bach*, *supra*, 147 Cal.App.3d at pp. 560–564.)

16.

The superior court had no jurisdiction to overrule the district court's determination of plaintiff's federal claims. (*Myles v. PennyMac Loan Services, LLC* (2019) 40 Cal.App.5th 1072, 1075 (*Myles*) [where a defendant removes a case to federal court and the district court dismisses the federal claims as invalid and remands state claims to the superior court, review of the district court's ruling is for the Ninth Circuit Court of Appeals].)

The only issues before the superior court on demurrer were whether plaintiff had stated valid claims under state law. It is axiomatic that the validity of a state law claim pending in state court is determined according to state law. Any contention the court should have applied federal law in assessing whether a valid state claim was stated is without merit.

The superior court did not err by applying California law (rather than federal law) in testing the sufficiency plaintiff's state law claims.

## IV. The Superior Court Erred in Concluding Plaintiff Had Not Adequately Alleged Damages in Connection with One Claim Only and Abused Its Discretion in Denying Plaintiff Leave to Allege Compliance with the Government Claims Act as to That Claim

### A. *Standard of Review*

" ' "In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory." ' [Citation.] 'We "adopt[] a liberal construction of the pleading and draw[] all reasonable inferences in favor of the asserted claims." [Citation.] We are not bound by the trial court's reasoning and may affirm the judgment if correct on any theory.' [Citation.] 'We review the trial court's refusal to grant leave to amend under the abuse of discretion standard.' " (*Manderson-Saleh v. Regents of University of California* (2021) 60 Cal.App.5th 674, 707.)

17.

**B.** *Plaintiff's Remaining Contentions on Appeal*

In his opening brief, plaintiff complains that he attempted, on numerous occasions, to file an amended complaint and impliedly contends the superior court should have allowed the filing. To the extent plaintiff has raised the issue, he has done so in a conclusory and relatively sparse fashion.**9** He has provided no argument or authority to demonstrate how his proposed SAC or proposed fourth amended complaint is sufficient against demurrer or how he could otherwise amend his pleadings to state a viable cause of action. Nor does he provide any argument to demonstrate that the court erroneously sustained Gardner's demurrer to the TAC beyond his statement that he attempted to amend his pleading but was denied.

" 'Issues do not have a life of their own: if they are not raised or supported by [substantive] argument or citation to authority, we [may] consider the issues waived.' " (*Holden v. City of San Diego* (2019) 43 Cal.App.5th 404, 418.) A party that is in propria

---

**9** The sum and substance of plaintiff's discussion of the issue of amendment in his opening brief is contained in two passages, as follows:

"Defendants[] filed a Demurrer [citation]; Which, Appellant/Plaintiff, filed a 2nd Amended Complaint [citation]; Multiple Oppositions [citation]; and Multiple Requests to File Amended/Supplemental Complaints, the later bearing an attached Amended Complaint therewith [citation] in response to. Yet a Demurrer was subsequently conducted, and the Defendants' Demurrer was sustained on April 21, 2021 [citation]." [¶ … ¶]

"On September 15, 2020, the Court issued an Order that Plaintiff's/Appellant's Third Amended Complaint (i.e., 42 U.S.C. § 1983 Civil Rights Complaint) is the operative complaint [citation to record], and despite Appellant's/Plaintiff's numerous attempts and requests to file an Amended Complaint [citation to record] the Court denied Plaintiff's requests, and attempts; Moreover, the Court did not order the Appellant/Plaintiff to file an amended complaint sua sponte, despite his struggles with the procedure; in addition to the Defendants' colleagues interference with his access to the court [citation]; otherwise, there would have been an Amended State Complaint [citation] before the court …."

persona is not exempt from the rules of appellate procedure and must still bear the burden of demonstrating reversible error. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246.) "Under the law, a party may choose to act as his or her own attorney. [Citations.] '[S]uch a party is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys.' " (*Id.* at pp. 1246–1247.) Moreover, it is not the job of an appellate court to develop an appellant's arguments for him or her. (*Dills v. Redwoods Associates, Ltd.* (1994) 28 Cal.App.4th 888, 890, fn. 1.)

Notwithstanding, we have compared the TAC to plaintiff's proposed SAC, and to its nearly identical counterpart, i.e., the proposed fourth amended complaint. We note that the TAC, in substance and in nearly identical language, includes nearly all the substantive allegations of the proposed amended complaints proffered by plaintiff. Thus, in effect, the superior court addressed all the substantive allegations of the TAC and nearly all the allegations in the proposed amended complaints.[10] In addition, Gardner addressed the issue of whether the court abused its discretion in denying plaintiff leave to amend. Accordingly, we will consider the issue as having been sufficiently raised on appeal.

---

[10] In his reply brief, plaintiff contends for the first time on appeal that he was entitled to amend his TAC pursuant to section 472 which provides, in part: "A party may amend its pleading once without leave of the court … after a demurrer or motion to strike is filed but before the demurrer or motion to strike is heard if the amended pleading is filed and served no later than the date for filing an opposition to the demurrer or motion to strike." (§ 472, subd. (a).) Generally, appellate courts will not consider arguments raised for the first time in a reply brief absent a showing of good cause. (*Scott v. CIBA Vision Corp.* (1995) 38 Cal.App.4th 307, 322.) No good cause for the failure to raise the argument in plaintiff's opening brief has been presented. As a result, we consider the argument forfeited. Moreover, given our comparison, review, and consideration of the TAC, the SAC, and its nearly identical counterpart, i.e., the proposed fourth amended complaint, the result reached herein would be unchanged regardless of which pleading was considered.

**C.** *The Superior Court Did Not Err in Sustaining the Demurrer as to Plaintiff's Federal Law Claims*

The superior court sustained Gardner's demurrer to plaintiff's federal claims on grounds of res judicata. The court's determination regarding plaintiff's federal claims is unassailable. The case was removed to federal court and plaintiff's federal claims were screened and dismissed by the district court pursuant to 28 U.S.C. 1915A subdivision (b)(1) for failure to state a cognizable claim. As discussed in the preceding section of this opinion, this court lacks jurisdiction to overrule the district court's determination as to plaintiff's federal claims. (*Myles*, *supra*, 40 Cal.App.5th at p. 1075.)

"A dismissal under rule 12(b)(6) of the Federal Rules of Civil Procedure (28 U.S.C.) for failure to state a claim is regarded by federal courts as a judgment on the merits." (*Franceschi v. Franchise Tax Bd.* (2016) 1 Cal.App.5th 247, 259.) "Dismissal for failure to state a claim under [28 U.S.C. section] 1915A 'incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).' " (*Nordstrom v. Ryan* (2014) 762 F.3d 903, 908.) A dismissal pursuant to subdivision (b)(1) of 28 U.S.C. section 1915A is considered a dismissal with prejudice. (*Gladney v. Pendleton Correctional Facility* (2002) 302 F.3d 773, 775.)

Notably, the federal court provided plaintiff three opportunities to amend his complaint to state a valid federal claim. Even under California law, a plaintiff is limited in the number of times he may attempt to amend his complaint to survive a demurrer. Section 430.41 provides, in relevant part: "In response to a demurrer and prior to the case being at issue, a complaint or cross-complaint shall not be amended more than three times, absent an offer to the trial court as to such additional facts to be pleaded that there is a reasonable possibility the defect can be cured to state a cause of action." (§ 430.41, subd. (e)(1).) Thus, plaintiff was given ample opportunity to amend to state a viable federal claim but was unable to do so.

20.

We conclude the superior court did not err in sustaining Gardner's demurrer to plaintiff's federal claims.

**D.** ***The Superior Court Erred in Sustaining Gardener's Demurrer Without Leave to Amend as to One of Plaintiff's State Law Claims***

The district court, having found no cognizable federal claims, declined to exercise supplemental jurisdiction over plaintiff's state law claims. Instead, the district court remanded those claims to the superior court.

Gardner demurred to plaintiff's state law claims on grounds that plaintiff had failed to allege compliance with the Government Claims Act and to allege harm as a result of Gardner's alleged negligence. The superior court sustained the demurrer.

### 1. Failure to Comply with the Government Claims Act

In demurring to the TAC, Gardner acknowledged plaintiff "included a government claim about the alleged April 9, 2018 incident he described in his original Complaint" – i.e., the alleged incident whereby Gardner opened plaintiff's mail clearly marked as containing legal documents. Our review of plaintiff's original complaint confirms that a Government Claims Act claim form signed dated September 7, 2018, provided notice to the government of the incident. Similarly, plaintiff included the September 7, 2018, claim form as part of the documents attached to his proposed SAC and proposed fourth amended complaint. The claim form was served that same day. By all appearances, the claim form was timely submitted within six months of the alleged incident. (See Gov. Code § 911.2, subd. (a) ["A claim relating to a cause of action for death or for injury to a person or to personal property or growing crops shall be presented … not later than six months after the accrual of the cause of action. A claim relating to any other cause of

21.

action shall be presented … not later than one year after the accrual of the cause of action"].)[11]

However, as to the other state law claims referenced in the TAC, our review of plaintiff's filings reveals that a Government Claims Act claim form was signed, dated, and submitted to the government on January 9, 2020. This claim form would only be timely as to causes of action accruing on or after July 9, 2019. (Gov. Code § 911.2, subd. (a).) A review of plaintiff's other state law claims reveals the majority of them predate July 9, 2019. The sole possible exception relates to the alleged July/August 2019, incident.[12] The allegations, read in part (and without limitation):

> "In approximately July or August of 2019, defendant W. Gardener summoned the plaintiff for a parcel distribution for a CDCR approved vendor (i.e., Access Securepak®). During said distribution, defendant W. Gardner informed the plaintiff that he was not authorized to receive the enclosed extension cord minus exchanging the one reflected on plaintiff's property card warranting a one for one exchange. The plaintiff informed defendant W. Gardner that he would like to return the extension cord … to facilitate a refund …; ... [P]laintiff forwarded 10 prepaid indigent envelopes in compliance with CCR Tit[le] 15 [sections] 3313(a)(4), 3134(c)(1), and 3138(b) to cover the cost of postage. However, in blatant disregard for said clearly established laws/regulations said official(s) insisted that the cost of postage must derive from the plaintiff's inmate trust account; although the plaintiff's account was bare, and the plaintiff was indigent and had no outside source to make a deposit thereto …. … CSATF-SP officials negligently, arbitrarily, capriciously, maliciously, and in concert …,

---

[11] Although the superior court sustained the demurrer in part based upon a failure to comply with the Government Claims Act, it appears the court may have done so only in connection with alleged incidents occurring *after* the alleged April 9, 2018, incident.

[12] We acknowledge plaintiff has alleged he subscribed to Bayview Newspaper, a monthly publication, in late 2017 or early 2018, and has only received eight newspapers between then and August 9, 2019. Although he contends "CDCR John/Jane Does are culpable" for the newspapers he did not receive, he does not allege any facts to support this allegation. Thus, no negligence cause of action is stated with regard to this issue. Furthermore, the facts alleged are insufficient to demonstrate plaintiff presented a timely Government Claims Act claim with regard to the issue.

22.

prematurely disposed of plaintiff's property. … [And,] … plaintiff's 10 prepaid indigent envelopes … have never been returned to him…."

Based on our review of the record on appeal, we conclude plaintiff could have amended the TAC to allege compliance with the Government Claims Act – but only with regard to the alleged April 9, 2018, incident, and *potentially* with respect to the alleged July/August 2019, incident if plaintiff can sufficiently narrow down the date of the incident. As to all other state law claims, we agree with the superior court that plaintiff could not amend the TAC to allege compliance with the Government Claims Act.

### 2. Failure to Allege Damages

The superior court also sustained the demurrer on the grounds that plaintiff did not, and could not, allege any damages with respect to his claims. We conclude the court was correct that plaintiff could not allege cognizable damages with respect to the alleged April 9, 2018 incident, but incorrect as to whether damages were sufficiently alleged in connection with the alleged July/August 2019, incident.

Reviewing the TAC, plaintiff alleged he suffered a default in the *Vanaman* lawsuit and "mental anguish" as a result of the alleged April 9, 2018, incident. However, the superior court properly took judicial notice of the fact that plaintiff did not suffer a default in the *Vanaman* lawsuit. Rather, the record demonstrates the *Vanaman* lawsuit was adjudicated on its merits on grounds plaintiff failed to timely submit a Government Claims Act claim in connection with the claim(s) in the lawsuit. On appeal, Plaintiff does not contend that the alleged April 9, 2018 incident caused him to fail to timely submit a Government Claims Act claim.[13]

---

[13] Moreover, it appears such a contention is not possible. The superior court took judicial notice of its own files in the *Vanaman* lawsuit at Gardner's request including the court's "Order Denying Plaintiff's Petition for Relief From Claim Filing Requirements Under Government Code Section 946.6" (unnecessary capitalization omitted). In its order, the court noted that plaintiff contended he filed his Government Claims Act claim late because he was under a "mistaken belief that he was required to exhaust his administrative remedies before filing his government claim under Government Code section 911.2."

Plaintiff's allegations of mental anguish are insufficient to survive demurrer. Liability for emotional distress used to be conditioned upon the existence of additional physical injury having been suffered by the complainant. (6 Witkin, Summary of Cal. Law (11th ed. 2017) Torts, § 1160.) The requirement of additional physical injury was abrogated in *Molien v. Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916, 927–931. However, after *Molien* was decided, our Supreme Court noted that "with rare exceptions, a breach of … duty must threaten physical injury" in order for resulting emotional distress to be compensable as damages. (*Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 965, 985; *Erlich v. Menezes* (1999) 21 Cal.4th 543, 555–557 [holding that mental distress resulting solely from property damage caused by a defendant's negligence is not compensable].) Here, no physical injury resulted from, or was threatened by, the alleged April 9, 2018 incident. As a result, the superior court did not err in determining plaintiff did not allege compensable damages in connection with the alleged incident. We conclude the court properly sustained Gardner's demurrer in connection with the alleged April 9, 2018, incident.

However, with regard to the alleged July/August 2019 incident, we note that plaintiff alleged the destruction of his property and failure to return his property. Such allegations of damages are sufficient to survive a challenge on demurrer. We conclude the superior court erred in determining that plaintiff had not sufficiently alleged damages in connection with the alleged July/August 2019 incident. And, as mentioned previously, we have determined it *may* be possible for plaintiff to allege timely compliance with the Government Claims Act in connection with the alleged July/August 2019 incident. Consequently, the court's failure to allow such an amendment was an abuse of discretion.

## DISPOSITION

The judgment is reversed. The order sustaining Gardner's demurrer is reversed in part, and affirmed, in part. The order is reversed only as to the alleged July/August 2019 incident. Plaintiff shall have the opportunity to amend his complaint to allege

24.

compliance with the Government Claims Act as to that alleged incident. In all other respects the order is affirmed. In the interests of justice, each party shall bear their own costs on appeal.


                                        POOCHIGIAN, Acting P. J.

WE CONCUR:


DETJEN, J.


SMITH, J.